

FILED ___ LODGED
___ RECEIVED ___ COPY

AUG 1 4 2018

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

SEALED

1
2
3
4
5
6           IN THE UNITED STATES DISTRICT COURT
7              FOR THE DISTRICT OF ARIZONA
8
9   United States of America,                    CR-18-01124-PHX-JJT (JZB)

              Plaintiff,
10
                                                 **INDICTMENT**
11      vs.
                                          VIO:    18 U.S.C. § 1349
12   1.  Robert Berger,                           (Conspiracy)
         (Counts 1-32 & 38)                       Count 1
13
     2.  Peter Butzloff,                          18 U.S.C. § 1341
14       (Counts 1-32)                            (Mail Fraud)
                                                  Counts 2-7
15   3.  Kenneth Rufus,
         (Counts 1-37)                            18 U.S.C. § 1343
16                                                (Wire Fraud)
              Defendants.                         Counts 8-32
17
                                                  18 U.S.C. § 1028A
18                                                (Aggravated Identity Theft)
                                                  Counts 33-38
19
                                                  18 U.S.C. §§ 981(a)(1)(c) & 982
20                                                28 U.S.C. § 2461(c)
                                                  (Forfeiture Allegation)
21

22   THE GRAND JURY CHARGES:

23      At all times material to this indictment, within the District of Arizona and elsewhere:

24      1.      Defendants ROBERT BERGER, PETER BUTZLOFF, and KENNETH

25   RUFUS worked together to defraud insurance companies out of more than $6,000,000.

26   Defendants are associated with three suspicious warehouse fires, including a December 1,

27   2014 fire in Tempe, Arizona.  After the fires, defendants submitted fabricated documents

28   to their insurers to fraudulently claim millions of dollars in insurance proceeds.

**BACKGROUND**

2.    BERGER, BUTZLOFF, and RUFUS are friends and business associates. They owned several companies that purported to supply cardboard boxes to other businesses. Particularly after 2010 the companies did little to no actual business.

a.    BERGER, along with his then-wife, J.H., owned GraphicPak.

b.    BUTZLOFF owned PKGen. Corporate formation documents, bank records, and court records, confirm BERGER also had a business interest in PKGen.

c.    RUFUS owned Axentrix. Corporate formation documents, bank records, and court records confirm BERGER and BUTZLOFF also had a business interest in Axentrix. Axentrix promoted itself as a designer, manufacturer, and supplier of corrugated containers, displays, and chipboard, among other items.

3.    Between 2010 and 2014, three warehouses rented by BERGER, BUTZLOFF, and RUFUS (for GraphicPak, PKGen, and Axentrix) were destroyed by fire. Each fire followed a similar pattern: the warehouse caught fire in the middle of the night; a large inventory of cardboard boxes was allegedly destroyed in the fire; and defendants got millions of dollars in insurance proceeds for boxes supposedly destroyed in the fire and lost profits.

a.    The GraphicPak Fire. In the early morning hours of December 18, 2010, there was a large fire at 760 Vail Avenue in Montebello, California, a property with multiple warehouses, one of which was sub-leased by GraphicPak (owned by BERGER). The fire investigation showed there was tampering that may have affected the fire protection, including fire sprinklers and the fire alarm. BERGER had an insurance policy through Meadowbrook Insurance Group/Century Insurance with a policy limit of $1,000,000. BERGER received a total of $1,000,000 in insurance benefits from Meadowbrook/Century Insurance on or about March 4, 2011.

b.    The PKGen Fire. In the early morning hours of January 2, 2012, a fire occurred at a Las Vegas, Nevada warehouse at 6230 Kimberly Avenue, Suite D, leased by BUTZLOFF as the owner of PKGen. The fire likely was started by high-powered

photographic lamps, which BUTZLOFF told investigators he'd left on for more than a day, heating nearby materials so intensely that they ignited. BUTZLOFF estimated PKGen's loss to be $2,100,000, while fire investigators thought it was significantly less, around $20,000. BUTZLOFF made a claim to PKGen's insurer, Farmers Insurance Company, seeking $2,100,000—the policy limit. Based on false information and fabricated records BUTZLOFF provided, Farmers paid BUTZLOFF $1,978,151, more than $1.6 million of which he gave to BERGER.

          c.    <u>The Axentrix Fire</u>. In the early morning hours of December 1, 2014, a fire occurred at a Tempe, Arizona warehouse located at 1718 East Curry Road, a portion of which was leased by RUFUS as the owner of Axentrix. The Tempe Fire Department discovered during its investigation that the alarm system for Axentrix lost power on November 27, 2014, the day after RUFUS told investigators he had last visited the building. RUFUS made a claim to Axentrix's insurer, Scottsdale Insurance Company, for more than $5,000,000. Based on the false information and fabricated records RUFUS provided, Scottsdale Insurance paid RUFUS $4,122,670, nearly all of which he gave to BERGER. BERGER then shared some of the proceeds with others, including BUTZLOFF.

### COUNT 1
### (18 U.S.C. § 1349)
### Conspiracy to Commit Mail and Wire Fraud

#### The Conspiracy and Its Objects

4.      From at least December 2010 through at least January 2017, in the District of Arizona and elsewhere, defendants BERGER, BUTZLOFF, and RUFUS knowingly and willfully conspired with each other, and with other persons known and unknown to the grand jury, to commit the following offenses against the United States: 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).

#### Manner and Means of the Conspiracy

5.      It was part of the conspiracy that defendants set up companies that purported to supply cardboard boxes to other businesses. Defendants rented warehouse space for the

companies and obtained a small amount of boxes to place in the warehouse.

6. After defendants set up the companies and rented warehouse space for them, suspicious fires occurred at each warehouse. The fires occurred around the holiday season, when the demand for cardboard boxes is high and a legitimate box supplier would have more inventory. The fires occurred in the early morning hours, when no one was working at the company. Although local fire investigators could not definitely conclude the fires were intentionally set, suspicious circumstances surround each fire.

7. After the fires, defendants claimed large amounts of cardboard boxes were stored in the warehouses during the fires. Defendants filed insurance claims for the limit of their insurance policies, which increased with each fire. To support their fraudulent claims, defendants gave the insurers false information about their companies and provided fabricated documents, including false invoices, bills of lading, payment records, bank statements, and tax returns.

8. Based on the false information and fabricated documents provide by defendants, the insurance companies unknowingly approved defendants' claims and paid millions of dollars to defendants, who shared the proceeds.

**Overt Acts**

9. In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed within the district of Arizona and elsewhere after the PKGen Fire:

a. On or about January 9, 2012, BUTZLOFF was interviewed by C.W., an adjuster for Farmers Insurance Company, regarding the January 2, 2012 fire at PKGen's warehouse. BUTZLOFF told C.W., among other things, that (i) PKGen had been in business for five years, (ii) he was PKGen's only employee, (iii) PKGen's annual revenue was around $4 million, (iv) PKGen's annual income (net) was around $100,000, and (v) the value of PKGen's inventory lost in the fire was between $1.6 and $1.9 million.

b. On or about January 11, 2012, BUTZLOFF sent an email to D.C. of Mid-Century Insurance, an affiliate of Farmers, attaching PKGen's purported tax return

for 2010. The fabricated 2010 tax return BUTZLOFF provided, however, was never filed with the Internal Revenue Service.

c.      On or about January 13, 2012, BUTZLOFF met with B.A. of C.S.I., an appraisal firm hired by Farmers to assist with BUTZLOFF's insurance claim, to discuss the alleged inventory stored at PKGen's warehouse.

d.      On or January 17, 2012, BUTZLOFF completed and signed a "Proof of Loss" form for Mid-Century Insurance claiming a loss of $2.1 million from the January 2, 2012 fire at PKGen's warehouse. To support his claim, BUTZLOFF attached 46 invoices from GraphicPak—BERGER's company destroyed in the 2010 fire—which purported to show PKGen had purchased approximately $1,940,420 in products from GraphicPak between November 17, 2011 and December 30, 2011.

e.      On or about January 31, 2012, BUTZLOFF provided Farmers with copies of six checks (front and back), totaling $1,112,608, written by PKGen to GraphicPak—BERGER's company destroyed in the 2010 fire—which BUTZLOFF told Farmers was a supplier to PKGen. All six checks were drawn from PKGen's US Bank account ending in -9452 and were signed by BUTZLOFF. None of the six checks provided by BUTZLOFF to Farmers actually cleared the account, however. Instead, as summarized in the chart below, BUTZLOFF provided to Farmers the front side of a check that never cleared the account and the back side of a different check, also written to GraphicPak but for a much smaller amount, which actually cleared the account.

| Front of Check Provided to Farmers | | | Back of Check Provided to Farmers | | |
|---|---|---|---|---|---|
| Check No. | Date | Amount | Check No. | Date Posted | Amount |
| 1102 | 11/30/2011 | $189,434 | 1066 | 1/27/2012 | $13 |
| 1104 | 12/5/2011 | $169,438 | 1067 | 1/27/2012 | $18 |
| 1107 | 12/9/2011 | $193,600 | 1068 | 1/27/2012 | $21 |
| 1109 | 12/15/2011 | $158,640 | 1063 | 1/27/2012 | $53.21 |
| 1111 | 12/17/2011 | $230,496 | 1062 | 1/27/2012 | $23.71 |
| 1113 | 12/20/2011 | $171,000 | 1064 | 1/27/2012 | $30 |

f.    On or about March 11, 2012, BUTZLOFF responded to an email from A.C. at Farmers regarding the lamps that likely caused the January 2, 2012 fire at PKGen's warehouse. A.C. told BUTZLOFF the lamps were "fairly unique" and "not something one could easily purchase at any department store," and Farmers had been able to identify only two distributors of similar lights: an online retailer and a store in McAllen, Texas. BUTZLOFF responded: "I have no memory of where I may have purchased that particular set of light fixtures …. I instantly recognize my own socks or umbrella but likewise will have no recollection of where and when each of those were purchased."

g.    Based on the fabricated checks and other fraudulent documents and information BUTZLOFF provided, Farmers paid BUTZLOFF $1,978,151.19 between January and April of 2012 for the loss purportedly caused by the PKGen fire. On or about the dates listed below, Farmers mailed the following checks to BUTZLOFF, which were deposited in BUTZLOFF's Bank of America account ending in -9558:

i.    Check #1600355971, dated 1/17/2012, in the amount of $10,000.

ii.    Check #1600391759, dated 2/3/2012, in the amount of $990,000.

iii.    Check #1600391739, dated 2/3/2012, in the amount of $652,967.07.

iv.    Check #1600463283, dated 3/14/2012, in the amount of $24,205.57.

v.    Check #0198240497, dated 4/6/2012, in the amount of $878.55.

h.    BUTZLOFF gave more than $1.6 million of the fraudulently obtained insurance proceeds to BERGER. BUTZLOFF transferred more than $550,000 of the fraudulently obtained insurance proceeds to PKGen's US Bank accounts ending in -9452 and -7402, and then to GraphicPak's NuVision Federal Credit Union Account ending in -3642. BUTZLOFF also paid BERGER more than $1,050,000 by writing checks directly to BERGER from BUTZLOFF's Bank of America account ending in -9558, on the dates and in the amounts specified below:

i.    Check #1054, dated 2/17/2012, in the amount of $9,200.

ii.    Check #1024, dated 2/17/2012, in the amount of $500,000.

iii.    Check #1063, dated 3/28/2012, in the amount of $550,000.

1           i.       BUTZLOFF and BERGER also used approximately $190,533 of the

2   fraudulently obtained insurance proceeds to finance construction and operation of a honey

3   bee research institute and nature center in Maine on the property described in Paragraph

4   21.c below, which BERGER owns and BUTZLOFF operates.

5          10.    In furtherance of the conspiracy and to effect the objects of the conspiracy,

6   the following overt acts, among others, were committed within the district of Arizona and

7   elsewhere before and after the Axentrix fire:

8           a.      On or about May 12, 2014, RUFUS signed an Industrial Gross Lease

9   for warehouse space located at 1718 E. Curry Road in Tempe, Arizona, 85281.  The lease

10   began on May 15, 2014 and was to terminate on May 14, 2015.  RUFUS pre-paid the first

11   six months' rent (a total of $18,597.60) and a security deposit of $3,024 when he signed

12   the lease agreement.

13           b.      On or about July 16, 2014, October 8, 2014, and November 25, 2014,

14   RUFUS placed orders with S.B. Company, a cardboard box supplier located in California,

15   for a relatively small quantity of cardboard trays (around $15,000 per shipment) to be

16   delivered to Axentrix's warehouse in Tempe, Arizona.

17           c.      On or about December 3, 2014, RUFUS sent an email to D.S., a

18   forensic accountant hired by Scottsdale Insurance to assist in evaluating Axentrix's claim

19   for the fire on December 1.  RUFUS told D.S., among other things "he was in damage

20   control mode with [his] customers, vendor, etc."; "accounting data that will help facilitate"

21   his insurance claim was on a "blue Dell computer" in the warehouse; and "[t]he data in that

22   drive can give exact dollar amounts."

23           d.      On or about December 4, 2014, RUFUS emailed D.S. again about the

24   hard drive.  RUFUS also told D.S., among other things, "servicing my customers is top

25   priority"; "my customers are waiting on material and up to this point I am running out of

26   answers"; and "I am in a precarious situation – if my customers gets knowledge an accident

27   occurred, they will likely place orders with another company.  Moreover, if my vendor(s)

28   gets knowledge an accident occurred, they will pounce all over my customers and try to

strip these accounts away from Axentrix."

        e.     On or about December 8, 2014, RUFUS emailed D.S. in response to D.S.'s email summarizing the information he had received from RUFUS regarding Axentrix's business. In his response, RUFUS told D.S., among other things, "the business has no employees except for myself since May 2014" and he did the most recent inventory count on November 26, 2014, counting 1.7 million pieces. RUFUS attached to his email (i) the lease agreement RUFUS signed for the warehouse, (ii) Axentrix's purported tax returns for 2011-2013, (iii) a spreadsheet detailing the inventory and other assets purportedly destroyed in the fire, and (iv) 26 GraphicPak invoices to support his inventory claims. The tax returns, inventory spreadsheet and invoices were all fabricated.

        f.     On or about December 11, 2014, RUFUS emailed D.S. and said, among other things, "as stated in the previous email the last count on 11/26/14 was at approximately 1.7 million pieces which corresponds with the number of items submitted on the invoices. Thus, I have 99% plus confidence the invoices submitted was the actual count of inventory within the warehouse at the time of the loss. Of course all this can be corroborated once we are able to recover the data on the hard drive."

        g.     On or about December 16, 2014, RUFUS emailed D.S. to inquire about the status of the insurance claim, saying "Aside from holding our collective breath waiting for the scene to be cleared, is there any information you need from me to move this along? Any status would be appreciated."

        h.     On or about January 13, 2015, RUFUS sent a series of emails to D.S. attaching (i) bank statements for Axentrix, which had been altered (ii) receipts purportedly establishing RUFUS was out of town around the time of the fire, (iii) copies of six checks (front and back), totaling $2,496,483.20, written by Axentrix to GraphicPak which RUFUS told D.S. was a supplier to Axentrix. All six checks were drawn from Axentrix's US Bank account ending in -7375 and were signed by RUFUS. None of the six checks provided by RUFUS to D.S. actually cleared the account, however. Instead, as summarized in the chart below, RUFUS provided to D.S. the front side of a check that never cleared the account

and the back side of a different check, also written to GraphicPak but for a much smaller amount, which actually cleared the account—the very same checks that BUTZLOFF had provided to Farmers.

| Front of Check Provided to Farmers | | | Back of Check Provided to D.S. | | |
|---|---|---|---|---|---|
| Check No. | Date | Amount | Check No. | Date Posted | Amount |
| 1163 | 11/14/2014 | $403,443.20 | 1066 | 1/27/2012 | $13 |
| 1164 | 11/18/2014 | $474,000.00 | 1067 | 1/27/2012 | $18 |
| 1165 | 11/20/2014 | $441,916.00 | 1068 | 1/27/2012 | $21 |
| 1166 | 11/21/2014 | $267,034.00 | 1063 | 1/27/2012 | $53.21 |
| 1167 | 11/24/2014 | $373,740.00 | 1062 | 1/27/2012 | $23.71 |
| 1168 | 11/25/2014 | $536,350.00 | 1064 | 1/27/2012 | $30 |

i.      On or about January 26, 2015, RUFUS sent a series of emails to D.S. attaching (i) purchase orders from Axentrix to GraphicPak, (ii) bills of lading from GraphicPak to Axentrix, and (iii) checks Axentrix to GraphicPak and Steadfast Transportation.  The purchase orders and bills of lading RUFUS provided to D.S. were fabricated and the checks provided by RUFUS never actually cleared Axentrix's account.

j.      On or about February 10, 2015, RUFUS emailed D.S. and provided him with a January 2015 bank statement for Axentrix that was fabricated.

k.      On or about February 12, 2015, RUFUS emailed S.R. at Scottsdale Insurance to provide him with the names of two purported customers of Axentrix, Daedal and Flowing Glory, who RUFUS said would be willing to speak with Scottsdale Insurance. RUFUS told S.R., among other things, that it "was an arduous task" to find customers to speak with the insurance company and his "intuition tells me both will be apprehensive. So have at it Mr. [R]. See what documents you can squeeze out of them because all I got was a lot of shouting and threats."

l.      On or about February 19, 2015, fabricated purchase orders for Daedal were provided to D.S.

m.      On or about February 20, 2015, RUFUS emailed D. S. purchase orders from and invoices to Flowing Glory that were fabricated.

n.     On or about February 23, 2015, RUFUS emailed D.S. freight invoices from Steadfast Transportation that were fabricated.

o.     RUFUS provided additional false information to D.S., S.R., and others associated with Scottsdale Insurance via email and by telephone, including during telephone calls with D.S. on or about December 10, 2014; January 7, 8, 9, 15, 28, and 30, 2015; and February 6 and 26, 2015.

p.     Based on the fraudulent documents and information RUFUS provided, Scottsdale Insurance paid Axentrix and RUFUS $4,122,670 between December 2014 and March 2015 for the loss purported caused by the Axentrix fire. On or about the dates listed below, Scottsdale Insurance mailed the following checks to RUFUS, which were deposited in Axentrix's account at US Bank ending in –7375:

     i.     Check #1043220, dated 12/24/2014, in the amount of $2,500,000.

     ii.    Check #1049152, dated 1/20/2015, in the amount of $1,000,000.

     iii.   Check #1061957, dated 3/10/2015, in the amount of $588,915.

     iv.    Check #1061956, dated 3/10/2015, in the amount of $33,755.

q.     RUFUS gave nearly $4 million of the fraudulently obtained insurance proceeds to BERGER. Between January 2015 and April 2015, RUFUS transferred $3,994,650 from Axentrix's account at US Bank ending in –7375 to GraphicPak's NuVision Federal Credit Union account ending in -3642. From GraphicPak's NuVision Federal Credit Union account ending in -3642, $2,765,000 was transferred into BERGER's personal NuVision Federal Credit Union account ending in -7818.

r.     BERGER gave $515,940 of the fraudulently obtained insurance proceeds back to RUFUS. On or about the dates listed below, BERGER wrote the following checks from GraphicPak's NuVision Federal Credit Union Account ending in -3642 to RUFUS in the amounts specified below:

     i.     Check #2088, dated 1/23/15, in the amount of $250,000.

     ii.    Check #2095, dated 3/30/15, in the amount of $265,000.

     iii.   Check #2119, dated 1/22/16, in the amount of $940.

s.      BERGER used some of the fraudulently obtained insurance proceeds to purchase a home in Maine, described in Paragraph 26.b below, which he shares with BUTZLOFF.   On or about April 23, 2015, BERGER transferred $100,050 from his personal NuVision Federal Credit Union Account ending in -7818 to L.J.L.'s account at Key Bank of Maine for the purchase of the Maine home.  BERGER made another transfer of $253,201.70 from his personal NuVision account to L.J.L.'s Key Bank of Maine account on or about 7/2/15.

t.      BERGER also used the fraudulently obtained insurance proceeds to (i) pay off a Small Business Administration loan he obtained from Wells Fargo, (ii) pay his American Express account, (iii) make mortgage payments totaling more than $750,000 on a home he owned in Huntington Beach, California, described in Paragraph 21.a below, and (iv) pay his Discover Card account, among other things.   BERGER also shared the fraudulently obtained insurance proceeds with BUTZLOFF, M.B., and A.P.

u.      To conceal his ownership of the Huntington Beach home described in Paragraph 21.a below, BERGER transferred title for the home to B.Z., without B.Z.'s knowledge or authorization, using a California short form deed.  The fraudulent deed and a fabricated promissory note evidencing a purported loan from B.Z. to BERGER were recorded in Orange County, California on or about January 9, 2017.

All in violation of 18 U.S.C. § 1349.


**COUNTS 2-7**
**(18 U.S.C. § 1341)**
**Mail Fraud**

11.   The factual allegations above are incorporated in Counts 2-7.

12.   From at least December 2010 through at least January 2017, in the District of Arizona and elsewhere, defendants BERGER, BUTZLOFF, and RUFUS, with the intent to defraud, devised and willfully participated in, with knowledge of its fraudulent nature, the above-described scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations and promises.

- 11 -

13.    On or about the dates listed below, in the District of Arizona and elsewhere, for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, defendants caused to be delivered to them by mail the following items.

| Count | Date | Sender | Recipient | Item Mailed |
|---|---|---|---|---|
| 2 | 12/3/2014 | Scottsdale Insurance Co. 8877 N. Gainey Center Dr. Scottsdale, AZ 85258 | Axentrix Inc. 16603 Sugar Lane Fontana, CA 92337 | Acknowledgment of receipt of claim for Axentrix fire |
| 3 | 12/24/2014 | Scottsdale Insurance Co. 8877 N. Gainey Center Dr. Scottsdale, AZ 85258 | Axentrix Inc. 16603 Sugar Lane Fontana, CA 92337 | Check #1043220 for $2,500,000 |
| 4 | 1/13/2015 | Scottsdale Insurance Co. 8877 N. Gainey Center Dr. Scottsdale, AZ 85258 | Axentrix Inc. 16603 Sugar Lane Fontana, CA 92337 | Letter regarding claim |
| 5 | 1/20/2015 | Scottsdale Insurance Co. 8877 N. Gainey Center Dr. Scottsdale, AZ 85258 | Axentrix Inc. 16603 Sugar Lane Fontana, CA 92337 | Check #1049152 for $1,000,000 |
| 6 | 3/10/2015 | Scottsdale Insurance Co. 8877 N. Gainey Center Dr. Scottsdale, AZ 85258 | Axentrix Inc. 16603 Sugar Lane Fontana, CA 92337 | Check #1061957 for $588,915 |
| 7 | 3/10/2015 | Scottsdale Insurance Co. 8877 N. Gainey Center Dr. Scottsdale, AZ 85258 | Axentrix Inc. 16603 Sugar Lane Fontana, CA 92337 | Check #1061956 for $33,755 |

All in violation of 18 U.S.C. § 1341.

**COUNTS 8-32**
**(18 U.S.C. § 1343)**
**Wire Fraud**

14.    The factual allegations above are incorporated in Counts 8-32.

15.    From at least December 2010 through at least January 2017, in the District of Arizona and elsewhere, defendants BERGER, BUTZLOFF, and RUFUS, with the intent to defraud, devised and willfully participated in, with knowledge of its fraudulent nature, the above-described scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations and promises.

16.     On or about the dates listed below, in the District of Arizona and elsewhere, for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, defendants caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count.

| Count | Date | Description |
|---|---|---|
| 8 | 12/8/2014 | Email from RUFUS (kenneth@axentrix.biz) to D.S. providing false inventory information and attaching fabricated tax returns and invoices |
| 9 | 12/10/2014 | Telephone call between D.S. and RUFUS (Google Voice number 707-722-5243) to discuss insurance claim |
| 10 | 1/7/2015 | Telephone call between D.S. and RUFUS (Google Voice number 707-722-5243) to discuss insurance claim |
| 11 | 1/8/2015 | Telephone call between D.S. and RUFUS (Google Voice number 707-722-5243) to discuss insurance claim |
| 12 | 1/9/2015 | Telephone call between D.S. and RUFUS (Google Voice number 707-722-5243) to discuss insurance claim |
| 13 | 1/13/2015 | Emails from RUFUS (kenneth@axentrix.biz) to D.S. attaching fabricated bank statements and checks |
| 14 | 1/15/2015 | Telephone call between D.S. and RUFUS (Google Voice number 707-722-5243) to discuss insurance claim |
| 15 | 1/22/2015 | Payment from BERGER's GraphicPak NuVision Federal Credit Union account ending in -3642 to M.B. in the amount of $225,000 (check #2085) |
| 16 | 1/23/2015 | Payment from BERGER's GraphicPak NuVision Federal Credit Union account ending in -3642 to M.B. in the amount of $20,000 (check #2086) |
| 17 | 1/26/2015 | ACH transfer from BERGER's GraphicPak NuVision Federal Credit Union account ending in -3642 to BUTZLOFF in the amount of $9,999.99 |
| 18 | 1/26/2015 | ACH transfer from BERGER's GraphicPak NuVision Federal Credit Union account ending in -3642 to BUTZLOFF in the amount of $9,999.98 |
| 19 | 1/26/2015 | Emails from RUFUS (kenneth@axentrix.biz) to D.S. attaching fabricated purchase orders, bills of lading, and checks |
| 20 | 2/10/2015 | Email from RUFUS (kenneth@axentrix.biz) to D.S. attaching fabricated bank statement |

| Count | Date | Description |
|---|---|---|
| 21 | 2/12/2015 | Email from RUFUS (kenneth@axentrix.biz) to S.R. providing false information regarding customers |
| 22 | 2/19/2015 | ACH transfer from BERGER's GraphicPak NuVision Federal Credit Union account ending in -3642 to BUTZLOFF in the amount of $6,000 |
| 23 | 2/20/2015 | Email from RUFUS (kenneth@axentrix.biz) to D.S. attaching fabricated purchase orders and invoices |
| 24 | 2/23/2015 | Email from RUFUS (kenneth@axentrix.biz) to D.S. attaching fabricated freight invoices |
| 25 | 4/22/2015 | Wire transfer from BERGER's GraphicPak NuVision Federal Credit Union Account ending in -3642 to BUTZLOFF in the amount of $6,000 |
| 26 | 4/23/2015 | Wire transfer from BERGER's NuVision Federal Credit Union account ending in -7818 to L.J.L.'s account at Key Bank of Maine in the amount of $100,050 |
| 27 | 5/4/2015 | Payment from BERGER's GraphicPak NuVision Federal Credit Union account ending in -3642 to BUTZLOFF in the amount of $3,000 (check #2098) |
| 28 | 6/17/2015 | ACH transfer from BERGER's GraphicPak NuVision Federal Credit Union account ending in -3642 to BUTZLOFF in the amount of $5,000 |
| 29 | 7/2/2015 | Wire transfer from BERGER's NuVision Federal Credit Union account ending in -7818 to L.J.L.'s account at Key Bank of Maine in the amount of $253,201.70 |
| 30 | 7/15/2015 | Payment from BERGER's GraphicPak NuVision Federal Credit Union account ending in -3642 to M.B. in the amount of $12,500 (check #2106) |
| 31 | 9/30/2015 | Payment from BERGER's GraphicPak NuVision Federal Credit Union account ending in -3642 to BUTZLOFF in the amount of $2,000 (check #2112) |
| 32 | 12/9/2015 | Payment from BERGER's GraphicPak NuVision Federal Credit Union account ending in -3642 to BUTZLOFF in the amount of $950 (check #2107) |

All in violation of 18 U.S.C. § 1343.

**COUNTS 33-38**
**(18 U.S.C. § 1028A)**
**Aggravated Identity Theft**

17.    The factual allegations above are incorporated in Counts 33-38.

18.    On or about each of the dates set forth below, in the District of Arizona and elsewhere, defendants BERGER and RUFUS did knowingly use, without lawful authority,

- 14 -

1   a means of identification of another person during and in relation to felony violations

2   enumerated in 18 U.S.C. § 1028A(c), to wit Mail Fraud in violation of 18 U.S.C. § 1341

3   and Wire Fraud in violation of 18 U.S.C. § 1343, knowing that the means of identification

4   belonged to another actual person.

| Count | Date | Defendant | Description |
|-------|------|-----------|-------------|
| 33 | 11/21/2014 | RUFUS | Used identity of A.P. to sign check payable to S.B. Company for cardboard trays delivered to Axentrix |
| 34 | 12/8/2014 | RUFUS | Used identity of D.T. on fabricated tax returns provided to D.S. |
| 35 | 1/16/2015 | RUFUS | Used identity of A.P. to send email to S.B. Company regarding overpayment for cardboard trays |
| 36 | 2/19/2015 | RUFUS | Used identity of J.M. on fabricated purchase orders provided to D.S. |
| 37 | 2/23/2015 | RUFUS | Used identity of F.Y. on fabricated freight invoices provided to D.S. |
| 38 | 1/9/2017 | BERGER | Used identity of B.Z. on short form deed and promissory note to transfer title for California home |

15      All in violation of 18 U.S.C. § 1028A.

## FORFEITURE ALLEGATION

18      19.    The factual allegations above are incorporated in the forfeiture allegations.

19      20.    Pursuant to 18 U.S.C. §§ 981(a)(1)(c) and 982 and 28 U.S.C. § 2461(c), upon

20   conviction of the offenses in violation of 18 U.S.C. §§ 1341 and 1343 set forth in Counts

21   2-32 of this indictment, defendants shall forfeit to the United States of America any

22   property, real or personal, which constitutes or is derived from proceeds traceable to the

23   offenses.

24      21.    The property to be forfeited includes, but is not limited to, the following:

25          a.    Real property with a street address of 16672 Pacific Coast Highway,

26              Unit A, Huntington Beach, California 92649.

27          b.    Real property with a street address of 161 Lake Shore Road, Lot 202,

28              Madawaska, Maine 04756.

c.   Real property with an address of Parcel #000023-000023B, Madawaska, Maine 04756 (also referred to as 24 Gendreau Road, Saint David, Maine 04773).

d.   A sum of money equal to at least $6,100,821 in United States currency, representing the amount of money involved in the offenses related to the PKGen and Axentrix fires.

22.    If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

23.    If any of the property described above, as a result of any act or omission of the defendants: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. §§ 981(a)(1)(c) and 982(a)(1), 28 U.S.C. § 2461(c), and Rule 32.2(a) Federal Rules of Criminal Procedure.

A TRUE BILL

S/
FOREPERSON OF THE GRAND JURY
Date: August 14, 2018

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

S/
GARY M. RESTAINO
M. BRIDGET MINDER
Assistant U.S. Attorneys

I hereby attest and certify on _____ 8/15/2018
that the foregoing document is a full, true and correct
copy of the original on file in my office and in my custody.

CLERK, U.S. DISTRICT COURT
DISTRICT OF ARIZONA

by _____ Deputy

- 16 -

I hereby attest and certify on _____
that the foregoing document is a full, true and correct
copy of the original on file in my office and in my custody.

CLERK, U.S. DISTRICT COURT
DISTRICT OF ARIZONA

by _____ Deputy